**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Joseph OWENS,**
**Defendant-Appellant.**

No. 84–5015.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 1984.

Decided May 12, 1986.

752

William Fahey, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Allan Ides, Los Angeles, Cal., for defendant-appellant.

Before NELSON, BOOCHEVER and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

## I. BACKGROUND

James Joseph Owens appeals his conviction under 18 U.S.C. § 113(a) for assault with intent to commit murder.

On April 12, 1982, Correctional Officer John Foster was brutally assaulted while on duty at the federal prison at Lompoc, California. The evidence at trial established that Foster's attacker beat him repeatedly with a metal pipe. Foster sustained numerous injuries to his face, arms and hands as well as to his head. His injuries resulted in a profound loss of memory with respect to several events, including the attack itself.

On May 5, 1982, shortly before Foster left the hospital, he was questioned by FBI Agent Thomas G. Mansfield. Mansfield asked Foster who had assaulted him. Foster replied that it had been Owens, who was—and continues to be—a Lompoc inmate. Mansfield then displayed several photographs, including one of Owens, and Foster identified Owens' picture.

At trial, Foster testified that he had little memory of the attack. He testified that he could only remember feeling an impact on his head and seeing blood on the floor, and that he had no memory of seeing his assailant. While the record indicates that Foster was visited in the hospital by many people, including his wife who visited daily, his only clear memory of any visit concerned the May 5th visit by Mansfield. Foster recounted Mansfield's question as to who had attacked him and Mansfield's request that he make the photospread identification, as well as his responses to Mansfield.

On cross-examination, Foster reaffirmed his inability to recount the details of the attack. When asked if he remembered making any statements during his hospitalization, Foster testified that the only statements he remembered making were the statements of identification made to Mansfield. Defense counsel sought to refresh Foster's recollection with certain hospital records indicating that while he was hospitalized Foster had alternately disclaimed knowledge of his attacker and attributed the assault to someone other than Owens. However, Foster was still unable to remember making any statements other than the ones to Mansfield. Similarly, Foster was unable to remember any visitors other than Mansfield, nor could he remember whether any of these visitors had suggested that Owens had been his assailant. Finally, Foster reaffirmed that he could "vivid[ly]" recall his statement to Mansfield and that at the time he made the statement, he knew why he had identified Owens. However, he was unable to remember any fact or reason that had caused him to state that Owens was the assailant.

On appeal, appellant's principal challenge is to the district court's admission of Foster's out-of-court identifications of Owens, which he contends was erroneous on four separate grounds.[1] First, Owens contends that since Foster had no recollection of his attacker, he lacked the personal knowledge required under Fed.R.Evid. 602 to testify to the identification. Second, Owens contends that Foster's initial statement implicating Owens was not an identification of someone "made after perceiving him" within the meaning of Fed.R.Evid. 801(d)(1)(C), and was therefore improperly admitted. Third, appellant argues that Foster's memory loss was such that he was not subject to cross-examination and therefore his testimony was inadmissible under Rule 801(d)(1)(C). Fourth, and related to his third contention, Owens argues that Foster's near-complete memory loss resulted in a deprivation of Owens' right to effective cross-examination in violation of the Sixth

Amendment. Appellant would prevail under his challenge based on the Federal Rules of Evidence—the first three claims—if Foster's testimony were held to be inadmissible under either Rule 602 or Rule 801(d)(1)(C).

## II. THE CLAIMS UNDER THE FEDERAL RULES OF EVIDENCE

### A. *Standard of Review*

■ The district court's construction of the Federal Rules of Evidence is a question of law subject to *de novo* review. *United States v. McClintock*, 748 F.2d 1278, 1287 (9th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985). Questions of the admissibility of evidence which involve factual determinations, rather than questions of law, are reviewed for an abuse of discretion. *Id.* at 1291. When a mixed question of law and fact is presented, the standard of review turns on whether factual matters or legal matters predominate. If an "essentially factual" inquiry is present, or if the exercise of the district court's discretion is determinative, then we give deference to the decision of the district court; otherwise, we conduct a *de novo* review. *See United States v. McConney*, 728 F.2d 1195, 1202–04 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### B. *Rule 602: "Personal Knowledge"*

In relevant part, Fed.R.Evid. 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." Appellant contends that because Foster was incapable of remembering whether or not he saw his attacker he lacked the requisite personal knowledge to testify to the out-of-court identifications of Owens.

■ Before an out-of-court identification can satisfy the provisions of Rule 602, the

---

1. Appellant also challenges the district court's denial of his pretrial motion to substitute coun-

sel. Because we reverse appellant's conviction on other grounds, we do not reach that issue.

personal knowledge requirement must be applied twice. First, the witness, who testifies in the courtroom that a statement of identification was made out of court, must have personal knowledge as to the making of the out-of-court statement; he need not, however, have personal knowledge as to the events that were the subject of his statement. *See* Advisory Committee Note to Rule 602; 3 D. Louisell & C. Mueller, *Federal Evidence* § 260 at 40 (1979); 3 J. Weinstein & M. Berger, *Evidence* ¶ 602[01] (1985); S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual* 305 (3d ed. 1982). Second, the declarant who made the out-of-court statement must have had personal knowledge of the events that were the subject of his statement. 4 D. Louisell & C. Mueller, *Federal Evidence* § 415 at 95–96 (1980); *McCormick on Evidence* §§ 10, 18, 300 (3d ed. 1984); Advisory Committee Note to Rule 803; 2 J.H. Wigmore, *Evidence* § 670 (Chadbourn rev. ed. 1979); *United States v. Lang*, 589 F.2d 92, 98 (2d Cir.1978). In this case, unlike the normal situation, Foster is both the in-court witness and the out-of-court declarant.

Clearly, when Foster testified in court he had personal knowledge of the making of his statements of identification to Mansfield on May 5. Thus, there is no problem with the first application of Rule 602. There is, however, some difficulty with the second application. It is not at all clear that Foster ever had personal knowledge of the events that were the subject of his statements to Mansfield, that is, it is questionable whether Foster had personal knowledge of the identity of his assailant.[2]

█ A person has "personal knowledge" of "a fact which can be perceived by the senses" only if he "had an opportunity to observe, and [has] actually observed the fact." Advisory Committee Note to Rule 602. *Accord* 2 Wigmore, *supra*, § 650;

*McCormick, supra,* § 10. Personal knowledge of a fact cannot be based on the statement of another. 2 Wigmore, *supra,* § 657; *McCormick, supra,* § 10 at 25.[3]

Foster testified that he was walking down an aisle "when I felt an impact on my head ... I looked down and saw blood on the floor and I—Now, I don't remember seeing at this time—I don't remember seeing the individual." Foster then said that "[t]he next thing I remember after receiving the blow to the head is many days later in the hospital." Finally, Foster stated that he could not recall "the person or persons" that struck him on the head. None of this testimony suggests that Foster saw his assailant. Indeed, it tends to suggest that he did not see his attacker and thus had no personal knowledge of the identity of his assailant. Moreover, Foster may have named Owens as a result of statements made to him during his hospital stay by one or more of his frequent visitors. Certainly the subject of the assault was one likely to arise when Foster and his friends or colleagues talked, and reports regarding the progress of the investigation may well have been conveyed to him. Unfortunately, as we have noted above, at the time of trial Foster had no recollection of any visits by persons other than Mansfield or the conversations that occurred during those visits.

The government argues in response that all of Foster's injuries were to the front of his body and therefore he must have seen his attacker. We agree that the location of the injuries provides support for the theory that Foster saw his attacker. On the other hand, it is possible that Foster was looking down or away and was taken by surprise when he was hit on the head; it is also possible that his assailant wore a mask or other disguise. Thus, the location of the injuries is not necessarily dispositive.

---

2. We note that if Foster did not have personal knowledge of the identity of his assailant, Mansfield's testimony regarding the identifications also is inadmissible because if we apply Rule 602 to Mansfield's evidence, the first application is satisfied, but the second is not, due to Foster's lack of knowledge.

3. There are certain exceptions to this rule, but none of them is relevant here. *See* 2 Wigmore, *supra,* §§ 664–670.

The question whether Foster had personal knowledge of the identity of his attacker is a mixed question of law and fact in which factual inquiries predominate, and thus, deference to the district court's ruling would normally be appropriate. Here, however, the district court did not rule on the issue after considering the evidence actually introduced.[4] Because the district court made its ruling without having the benefit of testimony, because the question is such a close one and turns heavily on a factual inquiry, and because of our disposition of other issues in this case, *see infra* p. 757, we do not believe it necessary or advisable to determine whether Foster had personal knowledge of the identity of his attacker.

### C. *Rule 801(d)(1)(C)*

#### 1. *"Made after perceiving him."*

During trial, Foster testified that prior to the photospread, Mansfield asked him whether he knew who his assailant was and that he responded that it was Owens. Appellant argues that the part of Foster's testimony relating his response constituted impermissible hearsay.

Rule 801(d)(1)(C) provides that

[a] statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... one of identification of a person made after perceiving him.

Appellant contends that Foster's initial statement to Mansfield was not an "identification of a person made after perceiving him," on the ground that the perception the rule refers to is a perception occurring after the crime has taken place. This question as to the meaning of Rule 801(d)(1)(C) is, as noted in part II.A, *supra*, reviewed *de novo*.

█ Foster's statement to Mansfield clearly complied with the literal wording of Rule 801(d)(1)(C): he had perceived appellant many times prior to the identification he gave to Mansfield. Furthermore, the purpose of Rule 801(d)(1)(C) is to allow the introduction of identifications made when "the witness' observations are still fresh in his mind ... before his recollection has been dimmed by the passage of time ... [or there has been] the opportunity ... to influence the witness to change his mind." S.Rep. No. 199, 94th Cong., 1st Sess. 2 (1975). *See also* H.R.Rep. No. 355, 94th Cong., 1st Sess. 3 (1975), *reprinted in* 1975 U.S.Code Cong. & Ad.News 1092, 1094 (same). A requirement that Foster first view appellant before being asked whether he knew who his assailant was would not further this purpose; rather, it would seem to hinder it by making Foster's subsequent identification a product of governmental suggestion. The commentators have rejected any requirement that the identifying witness perceive the person again after the crime, and we do also. *See* 4 Louisell & Mueller, *supra*, § 421 at 207–08; 4 Wein-

---

**4.** Before the trial began, the district court ruled, based on an offer of proof by the government, that Foster met the personal knowledge requirement of Rule 602. Counsel for appellant were allowed at that time to enter a continuing objection to Foster's testimony. The testimony at trial did not correspond to the offer of proof, but the district court did not reconsider its ruling, despite the continuing objection. Because the testimony at trial was so different from the offer of proof, we simply cannot say that the district court in fact ruled that "evidence [was] introduced sufficient to support a finding that [the witness had] personal knowledge of the matter." Rule 602.

Our dissenting colleague argues that in order to avoid deciding the constitutional question we should remand the case to the district court so

that it can determine whether or not Foster had the requisite personal knowledge. While we have serious questions regarding whether or when the generally salutory jurisprudential principle invoked by Judge Boochever should be applied where the result would be to remand a criminal case for further proceedings, we need not address that issue here. As we hold *infra*, p. 757, the admission of Foster's testimony was in any event harmless error under the non-constitutional standard that is applicable to a violation of the Federal Rules of Evidence. Thus, even if the district court were to decide that Foster did not have the necessary personal knowledge, and thus that Rule 602 was violated, we would still have to reach the constitutional question.

stein & Berger, *supra*, ¶ 801(d)(1)(C)[01] at 801–175.[5]

### 2. *"Subject to cross-examination"*

Appellant next argues that Foster's statements identifying him as the assailant constitute impermissible hearsay because Foster was not, in view of his loss of memory at the time of trial, "subject to cross-examination" within the meaning of Rule 801(d)(1)(C). This mixed question of law and fact is not predominantly factual, so we review it *de novo*. We assume, *arguendo*, that Foster was subject to cross-examination as to his acts of (a) making the statement in which he named appellant as his assailant and (b) selecting Owens' picture from the photospread. The question before us, however, is whether Rule 801(d)(1)(C) contemplates cross-examination of the declarant on the facts and circumstances *underlying* the identification and, if so, whether Foster's loss of memory prevented compliance with that requirement.

An examination of Rule 801(d)(1)(C) and its rationale compels the conclusion that an extra-judicial identification may not be admitted unless the declarant is subject to cross-examination on the reasons why he made the identification. Hearsay evidence is excluded because it is thought to be generally substantially less reliable than live testimony. 4 Louisell & Mueller, *supra*, § 413 at 69; 4 Weinstein & Berger, *supra*, ¶ 800[01] at 800–11. Live testimony is considered reliable because it is given under oath, the jurors can observe the witness' demeanor, and the witness is subject to cross-examination. 4 Louisell & Mueller, *supra*, § 413 at 71–72; 4 Weinstein & Berger, *supra*, ¶ 800[01] at 800–10 to 800–11; McCormick, *supra*, § 245. Of these safeguards, cross-examination is thought to be the most important. McCormick, *su-*

*pra*, § 245 at 728; 4 Louisell & Mueller, *supra*, § 413 at 72.

It is the power of cross-examination that provides the principal rationale for Rule 801(d)(1). The reliability concerns of the rule against hearsay have been satisfied when "the witness is ... subject to cross-examination ... There is ample opportunity to test him as to *the basis* for his former statement." *United States v. Fiore*, 443 F.2d 112, 115 (2d Cir.1971), *cert. denied*, 410 U.S. 984, 93 S.Ct. 1510, 36 L.Ed.2d 181 (1973) (quoting 3 J.H. Wigmore, *Evidence* § 1018 (3d ed. 1940)) (emphasis added); *Accord* McCormick, *supra*, § 251 at 745; 4 Weinstein & Berger, *supra*, ¶ 801(d)(1)[01] at 801–97 & n. 4.

■ The cross-examination requirement of Rule 801(d)(1)(C) is intended to permit the opposing party to explore the trustworthiness of the extra-judicial statement of identification. Although cross-examination on the process of identification itself is consistent with this objective, it does not, without more, satisfy it. In order to explore adequately the trustworthiness of the prior identification, and thereby satisfy the purpose of the Rule, the opposing party must be permitted to cross-examine the declarant on the facts and circumstances underlying the identification. Accordingly, the scope of cross-examination contemplated by Rule 801(d)(1)(C) extends beyond the mere incident of identification and includes the basis on which the declarant made the out-of-court identification.

■ Having determined the proper scope of cross-examination under Rule 801(d)(1)(C), we must next determine whether Foster was "subject to cross-examination," within the meaning of the Rule, on the basis for his identification of Owens. Appellant's counsel were not restricted in their questioning of Foster on this issue, but Foster's unvarying answer

---

**5.** Appellant's contention is based on a rather cryptic statement in M.H. Graham, *Handbook of Federal Evidence* § 801.13 n. 96 (1981 & Supp. 1985). It is not clear that the footnote asserts what appellant claims it does, but even if we assume that appellant's reading of the footnote

is correct, the assertion is not supported by the authority the footnote cites: *United States v. Marchand*, 564 F.2d 983 (2d Cir.1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978). Rather, *Marchand* appears to support the view we adopt.

was that he did not remember. The question then is whether an inability to answer due to a loss of memory means that the witness is not "subject to cross-examination." We conclude that for the reasons discussed in part III, *infra*, Foster's inability to answer questions on cross-examination prevented appellant from adequately exploring the basis for Foster's out-of-court identifications and that the jury did not have sufficient grounds for evaluating the correctness of those identifications. We therefore hold that Foster was not "subject to cross-examination" within the meaning of Rule 801(d)(1)(C) and that Foster's testimony as to his out-of-court identifications constituted inadmissible hearsay.[6]

### 3. *Harmless error*

■ In order to decide whether the erroneous admission of Foster's testimony requires the reversal of appellant's conviction we must determine "whether the prejudice resulting from the error was more probably than not harmless." *United States v. Barrett*, 703 F.2d 1076, 1081–82 (9th Cir.1983); *United States v. Castillo*, 615 F.2d 878, 883–84 (9th Cir.1980); *United States v. Valle-Valdez*, 554 F.2d 911, 916 (9th Cir.1977); Fed.R.Evid. 103(a).

■ In addition to Foster's testimony, the jury heard the testimony of four inmates who had either witnessed the attack, or to whom Owens had made inculpatory remarks regarding the assault. Two items of clothing identified as belonging to

Owens, but with blood stains that corresponded to Foster's blood type, were found outside a prison window. We recognize that there are reasons why the jury might not have found the testimony of the inmates credible, *see infra* part III.B, but the weight of the evidence is such that we conclude that it is more probable than not that the prejudice resulting from the erroneous admission of Foster's testimony was harmless. Thus, we must now turn to appellant's claim under the Confrontation Clause.

## III. THE CONFRONTATION CLAUSE

### A. *Jury's Ability to Evaluate Foster's Testimony*

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Appellant contends that because of Foster's complete inability to recall the facts and circumstances underlying his out-of-court identifications, appellant was prevented from engaging in effective cross-examination, and thus his rights under the Confrontation Clause were violated. The question raised by appellant was identified, but explicitly left open, by the Supreme Court in *California v. Green*, 399 U.S. 149, 168–70, 90 S.Ct. 1930, 1940–41, 26 L.Ed.2d 489 (1970), and *Delaware v. Fensterer*, —— U.S. ——, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam).[7] Because appellant's claim in-

---

**6.** We note that a similar issue exists with respect to the testimony of Mansfield. Under Rule 801(d)(1)(C), one to whom a witness makes an identification may testify to the fact of the identification as long as the person who actually made the identification is subject to cross-examination with respect to that identification. *See United States v. Elemy*, 656 F.2d 507, 508 (9th Cir.1981). Since we conclude that, as a result of his memory loss, Foster was not subject to cross-examination, it would appear that Mansfield's statement should have been excluded also. However, we need not decide that issue here.

**7.** In *Fensterer*, the Supreme Court summarily held that the Confrontation Clause was not violated by the admission of the *in-court* testimony

of an expert witness who could not remember the basis for one of the conclusions he testified to while in court. The case before us, however, involves the admission of an *out-of-court* statement. The Court explicitly stated in *Fensterer* that it was expressing no opinion as to the admissibility of *out-of-court* statements by witnesses who, as of the time of trial, had lost their memory. 106 S.Ct. at 295–96. Moreover, there is a distinct possibility that Foster's memory regarding the attack was impaired even prior to the time of his identification of Owens; obviously, the expert witness' memory loss in *Fensterer* did not occur before the time he reached his conclusions.

The dissent appears to take the position that because Foster testified and defense counsel were able to ask him questions, this case does

volves a mixed question of law and fact, and is not predominantly factual, and because it "requires consideration of the abstract legal principles that inform constitutional jurisprudence," we review it *de novo*. *McConney*, 728 F.2d at 1203.

The Supreme Court has stated that "the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact has a satisfactory basis for evaluating the truth of the [out-of-court] statement.'" *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970) (plurality opinion) (quoting *Green*, 399 U.S. at 161, 90 S.Ct. at 1936). This mission is accomplished in three ways: first, by insuring that the declarant testifies under oath; second, by forcing the declarant to submit to cross-examination, "the greatest legal engine ever invented for the discovery of truth;" and third, by permitting the jury to observe the declarant's demeanor. *Green*, 399 U.S. at 158, 90 S.Ct. at 1935. Clearly, Foster testified under oath; clearly the jury was able to observe his demeanor. The question, therefore, is whether in view of Foster's memory loss, it was possible for Owens to cross-examine him effectively.

The Supreme Court has repeatedly emphasized the importance of cross-examination in furthering the goals of the Confrontation Clause. *See, e.g., Ohio v. Roberts*, 448 U.S. 56, 63 & n. 6, 100 S.Ct. 2531, 2537 & n. 6, 65 L.Ed.2d 597 (1980) (quoting *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965)). Statements about which the declarant has not been cross-examined are generally thought to be subject to three dangers.

First, misperception: the declarant may not have accurately perceived what he describes, or he may not have perceived it all. Second, failure of memory: at the time the declarant makes his statement his memory may not correspond completely and accurately with his earlier perceptions. Third, faulty narration: the declarant, in his statement, may fail, either deliberately or inadvertently, to convey what he remembers accurately. *McCormick, supra,* § 245; 4 Louisell & Mueller, *supra,* § 413; 4 Weinstein & Berger, *supra,* ¶ 800[01]; Advisory Committee Note to Fed.R.Evid. Article VIII: "Introductory Note—The Hearsay Problem."[8] Normally, cross-examination will eliminate or significantly reduce these dangers. A careful inquiry by opposing counsel will help to expose any misperception or failure of memory. It may serve to impeach the declarant or it may refresh his recollection and cause him to alter his testimony to make it more accurate. Similarly, close questioning will usually force the declarant to explain clearly what he meant, and will make it harder for a lying declarant to maintain a consistent story, thus reducing the danger of failure of narration. 4 Louisell & Mueller, *supra,* § 413; 4 Weinstein & Berger, *supra,* ¶ 800[01] at 800–11; Advisory Committee Note to Fed. R.Evid. Article VIII: "Introductory Note— The Hearsay Problem."

▮▮▮ In this case, however, the type and extent of cross-examination to which Foster could be subjected could not serve to expose or significantly affect two of the three dangers surrounding an out-of-court identification, namely misperception and failure of memory. The only answers Foster was capable of giving could not provide

---

not present the question left open in *Green* and *Fensterer*. Such a position is based on a misunderstanding of the Supreme Court's language in these cases. In *Green*, the forgetful witness had in fact testified and been cross-examined, but the Court noted that it still might be possible that the witness' "apparent lapse of memory so affected [the defendant's] right to cross-examine as to" constitute a violation of the Confrontation Clause. 399 U.S. at 168, 90 S.Ct. at 1940. The case before us involves the introduction of a prior out-of-court statement that was not sub-

jected when it was made to cross-examination or the other safeguards of testimony at trial, and accordingly the question left open by *Green* and *Fensterer* is presented here. *See Fensterer,* 106 S.Ct. at 295.

8. Some commentators find four risks by subdividing faulty narration into two parts: ambiguity (inadvertent faulty narration) and insincerity (deliberate faulty narration). *See, e.g.,* 4 Louisell & Mueller, *supra,* § 413.

the jury with the information it needed in order to determine whether Foster had perceived his attacker, accurately or at all, or whether at the time he made the identification, his memory correctly reflected his perceptions.

At the time of trial Foster did not remember who attacked him or whether he had actually seen his attacker. Foster recalled that when he met with Mansfield he had a reason for identifying appellant, but stated that he could no longer remember what that reason was. Indeed, Foster apparently remembered almost nothing about the period of time commencing with the assault on him and ending with the out-of-court statements he made to Mansfield.[9] No one, including Foster, knows whether (1) Foster actually perceived his assailant, (2) if so, whether his perception of his attacker was accurate, and (3) whether at the time of his out-of-court identifications he had any memory of having observed that assailant. Not even the most skilled cross-examiner could elicit information that would help reduce the dangers of misperception or failure of memory. Clearly, two of the three dangers surrounding Foster's out-of-court identifications—misperception and failure of memory—could not be mitigated in any way by the only cross-examination of Foster that was available to Owens. Thus, Foster was not, and could not be, subjected to effective cross-examination concerning his out-of-court identifications. 4 Louisell & Mueller, *supra*, § 422 at 230, 248; 4 Weinstein & Berger, *supra*, ¶ 801(d)(1)(C)[01] at 801–178; Falknor, *The Hearsay Rule and Its Exceptions*, 2 U.C.L.A.L.Rev. 43, 53 (1954). Under the circumstances, cross-examination could not provide the jury with the requisite basis "for evaluating the truth of the [out-of-court] statement[s]." *See Green*, 399 U.S. at 161, 90 S.Ct. at 1936.[10]

**9.** Our dissenting colleague argues that there is a dispute as to the nature and extent of Foster's memory loss because Foster remembered and testified to certain events occurring during his hospitalization. This argument misses the point, however. We are not concerned with what Foster remembers about his stay in the hospital. Rather, what is relevant for purposes of the Confrontation Clause is Foster's memory of the events surrounding the assault. There is no dispute that Foster's loss of memory as to these events is actual and complete.

Furthermore, the dissent attempts to support its argument with a hypothetical example involving out-of-court exculpatory statements made by Foster as a *defense* witness. The fact that a statement by a prosecution witness is inadmissible does not necessarily lead to the conclusion that similar statements by a defense witness are inadmissible, *see Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); accordingly, the dissent's hypothetical example is not particularly helpful in resolving the case before us.

**10.** This case is readily distinguishable from the cases in which the courts have held that because the witness' claimed memory loss was so incredible as to not be believable a witness who had a claimed partial memory loss was "subject to cross-examination" within the meaning of Rule 801(d)(1) and the Confrontation Clause. *See, e.g. United States v. Williams*, 737 F.2d 594 (7th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985); *United States v. Baker*, 722 F.2d 343 (7th Cir.1983), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984); *United States v. Russell*, 712 F.2d 1256 (8th Cir.1983); *United States v. Thompson*, 708 F.2d 1294 (8th Cir.1983); *United States v. Murphy*, 696 F.2d 282 (4th Cir.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1303 (1983); *Vogel v. Percy*, 691 F.2d 843 (7th Cir. 1982); *United States v. Distler*, 671 F.2d 954 (6th Cir.), *cert. denied*, 454 U.S. 827, 102 S.Ct. 118, 70 L.Ed.2d 102 (1981); *United States v. Rogers*, 549 F.2d 490 (8th Cir.1976), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977); *United States v. Shoup*, 548 F.2d 636 (6th Cir.1977). *See also People v. Green*, 3 Cal.3d 981, 92 Cal. Rptr. 494, 479 P.2d 998 (1971) (applying Cal. Evid.Code § 1235, which is very similar to Fed. R.Evid. 801(d)(1)(A)). The rationale in these cases was that the witness' untruths or evasions regarding their ability to remember gave rise to inferences concerning the truth of their prior out-of-court statements, and thus the jury had a basis for evaluation that satisfied Rule 801(d)(1) and the Confrontation Clause. In the case before us, however, there is no question but that Foster's memory loss is actual and complete.

Furthermore, all but one of the cases cited dealt with Rule 801(d)(1)(A), which states that prior inconsistent statements under oath are not hearsay. Thus, these courts were really wrestling with the question of whether a loss of memory is inconsistent with a prior remembrance. Appellant, however, has invoked Rule 801(d)(1)(C), not 801(d)(1)(A). *Baker*, the sole exception, did involve Rule 801(d)(1)(C), but the court held that the Rule 801(d)(1)(A) cases were controlling, without any discussion of the differences between the two provisions.

The government contends, and our dissenting colleague agrees, that Foster was subject to "full and effective" cross-examination because he could be cross-examined on the subject of the meeting with Mansfield during which he made the identifications of Owens. This argument appears to be based on *United States ex rel. Thomas v. Cuyler*, 548 F.2d 460, 463 (3d Cir.1977), in which the court held that the Confrontation Clause is satisfied if the witness is sworn and does not refuse to answer questions, regardless of the witness' actual or feigned loss of memory. The Third Circuit based its holding on Justice Harlan's separate concurring opinion in *Green*, 399 U.S. at 172–89, 90 S.Ct. at 1942–51. Justice Harlan, however, less than a year later, repudiated the approach he took in his separate opinion in *Green*, *see Dutton*, 400 U.S. at 93–100, 91 S.Ct. at 221–25 (Harlan, J., concurring), and the Supreme Court has rejected it as well. *Roberts*, 448 U.S. at 66 n. 9, 100 S.Ct. at 2539 n. 9. Accordingly, we must reject the government's argument.

Because the jury could not evaluate the truth, or in this case the correctness, of Foster's remarks, appellant's rights under the Confrontation Clause have been violated, *Green*, 399 U.S. at 159–61, 90 S.Ct. at 1935–37,[11] unless a "showing of particularized guarantees of trustworthiness" of Foster's out-of-court identifications was made. *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539.[12]

In determining whether there has been a "showing of particularized guarantees of trustworthiness" of an out-of-court statement, we must examine the four so-called "indicia of reliability" which were set forth by the Supreme Court in *Dutton*. An out-of-court declaration is reliable if (1) the out-of-court statement does not contain an express assertion about past fact, (2) the possibility that the out-of-court statement is founded on a faulty recollection is extremely remote, (3) the circumstances under which the statement was made are such that it can be supposed that the declarant is not misrepresenting the facts, and (4) the declarant had personal knowledge of the matters asserted in the statement. 400 U.S. at 88–89, 91 S.Ct. at 219–20 (plurality opinion). *See also Roberts*,

---

Finally, in all but one of the cases cited in this note, the witnesses who suffered the "incredible" memory loss were criminal associates of the defendants. The witnesses' prior out-of-court statements inculpated the defendants, and presumably the memory loss was faked in an attempt to avoid inculpating them further. On appeal, the defendants further tried to improve their legal position by arguing that the witnesses' courtroom loss of memory meant that the prior out-of-court inculpatory statements were inadmissible. In *Distler*, the sole case in which the forgetful witnesses were not criminal associates of the defendant, the court noted the close personal friendship between the defendant and the witnesses' employer. Obviously, in the case before us, Foster's loss of memory, which was actual, not simulated, did not constitute part of an attempt to make it more difficult to convict the defendant.

11. As we have discussed, *supra* note 10, the jury has a sufficient basis for determining the truth of a witness' testimony if the nature of the witness' claimed loss of memory is such that the jury can draw inferences regarding the truthfulness and believability of the witness from the claim itself. The cases described in note 10 all involved highly dubious claims of memory loss that permitted the jury to evaluate the reliability of both the witness' out-of-court statement and

his in-court claim of memory loss. In *Fensterer*, the Supreme Court held that an expert witness' *actual* loss of memory as to how he reached certain conclusions permitted the jury to draw inferences regarding the reliability of the expert's conclusions, especially when another expert testified and cast doubt on those conclusions. An expert who cannot remember why he arrived at his opinion is obviously not a very reliable expert, and once counsel has brought this fact out on cross-examination, the purposes of the Confrontation Clause have been served. In the case before us, however, Foster's memory loss results entirely from a brutal assault, and thus the mere fact that he has very little memory raises no inferences of any sort regarding the believability of his out-of-court statements. No questions posed to Foster by the defense could in any way assist the jury in its effort to determine whether his identifications of Owens were correct.

12. Normally this exception applies when cross-examination is not possible because the declarant cannot be produced at trial. The government has the burden of proving the declarant's unavailability. *Roberts*, 448 U.S. at 65–66, 100 S.Ct. at 2538–39.

448 U.S. at 65–66, 100 S.Ct. at 2538–39 (same). If the out-of-court statement "falls within a firmly-rooted hearsay exception" then reliability and trustworthiness are presumed. *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539. In the case before us, however, none of the relevant hearsay exceptions applies. *See supra*, part II.B.

Turning to the *Dutton* indicia, we see that at least three of the four are not present here. First, Foster's out-of-court identifications contained express assertions of past fact. Second, we cannot say that the possibility is extremely remote that the out-of-court statements were founded on a faulty (or even total lack of) recollection at the time those statements were made. Third, we have no idea whether Foster's statements were based on information provided by others and whether he may therefore have unintentionally misrepresented the facts. As to the fourth indicium, it is unclear whether Foster had personal knowledge of the matters asserted in his identification of appellant. *See supra*, part II.C.

We have sometimes looked to other factors besides the *Dutton* indicia in determining whether an out-of-court statement is sufficiently trustworthy to be admitted without cross-examination. *See Barker v. Morris*, 761 F.2d 1396, 1403 (9th Cir.1985). However, any such additional factors must give rise not only to a generalized belief in trustworthiness, but also to "particularized guarantees" of trustworthiness. *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539. In the case before us there are no circumstances which provide those "particularized guarantees." With respect to Foster's out-of-court identifications we know only that Foster made the identifications. Due to the fact that Foster had daily visitors while he was in the hospital, but does not remem-

ber any of them, there is a strong possibility that his identifications of Owens may have resulted from information provided by visitors rather than from his own perceptions at the time of the attack. In view of Foster's loss of memory we simply cannot determine on the basis of the record before us whether the out-of-court identifications are trustworthy.

Because Foster could not be subjected to cross-examination that would afford the jury a satisfactory basis for determining the truth of his out-of-court identifications, and because no "showing of particularized guarantees of trustworthiness" of the out-of-court statements was made, we conclude that appellant's rights under the Confrontation Clause were violated.[13]

### B. *Harmlessness of Error*

Until recently, the law in our circuit regarding the effect of a Confrontation Clause violation was clear. In *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974), the Court had said that if a defendant is "denied the right of effective cross-examination [there is] constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." We construed *Davis* as holding that the harmless error analysis of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), did not apply to violations of the Confrontation Clause. Rather, we said, as *Davis* appeared to say, that a violation of that clause necessarily mandated reversal. *See, e.g., Chipman v. Mercer*, 628 F.2d 528 (9th Cir.1980); *Skinner v. Cardwell*, 564 F.2d 1381 (9th Cir.1977), *cert. denied*, 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978). However, in order to avoid automatic reversals divorced from any considerations of prejudice, our rule was that we would not

---

**13.** We also note that there may be problems under the Due Process Clause of the Fifth Amendment regarding the admission of Foster's testimony. The Supreme Court has indicated that when there is "a very substantial likelihood of irreparable misidentification," out-of-court identifications would violate the Due Process Clause. *Manson v. Brathwaite*, 432 U.S. 98, 116,

97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977). Because of Foster's complete loss of memory, there may be such a likelihood in this case. However, in view of our resolution of appellant's Confrontation Clause claim, it is unnecessary for us to reach the Due Process Clause issue here.

find a violation of the Confrontation Clause unless the subject matter upon which a witness could not be properly cross-examined was sufficiently important. *See, e.g., Chipman; Cardwell.* Thus, while our rule differed from *Chapman* with respect to its analytical approach, the practical effect of the two rules was much the same.

The Supreme Court has now rejected our analytical approach and held that the *existence* of violations of the Confrontation Clause is to be determined without regard to considerations of prejudicial effect on the trial as a whole. It has also held, however, that *reversal* is required only under the circumstances that apply in the case of most other constitutional violations; specifically, it has now decided that the *Chapman* harmless error standard *is* applicable to violations of the Confrontation Clause. *Delaware v. Van Arsdall,* 106 S.Ct. 1431, 1438 (1986). Thus, we can no longer use the analysis applied in cases such as *Chapman* and *Skinner,* although our prior decisions may still be of precedential value.

The *Chapman* harmless error test is a strict one indeed. An error is harmless under *Chapman* only if the reviewing court can say it was "harmless beyond a reasonable doubt." *Van Arsdall,* 106 S.Ct. at 1438. In determining whether a violation of the Confrontation Clause meets the *Chapman* standard, we must consider, *inter alia,* "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Id.*

■ Although we have held above, *see* part II.C.3, that the erroneous admission of Foster's testimony was harmless error under the non-constitutional test, we must now consider whether it was harmless under the constitutional standard, because the two tests clearly utilize different standards. Under the non-constitutional test,

an error is harmless if the prejudice resulting from the error was more probably than not harmless. *See supra* part II.C.3. However, under the strict constitutional test of *Chapman,* an error is harmless only if there is no "reasonable possibility that [it] might have contributed to the conviction." *Chapman,* 386 U.S. at 23, 87 S.Ct. at 827.

■ Examining the relevant factors mentioned in *Van Arsdall* —and we recognize that different cases may require the examination of different factors—we conclude that the error here requires reversal. Foster's testimony was certainly important; in fact, it is difficult to think of any testimony more highly material than a victim's identification of his assailant, or more prejudical to a defendant's case. The fact that the jury was informed that Foster could not remember why he had identified Owens diminishes the impact of his testimony but does not change our basic view of its effect. The remaining testimony inculpating appellant was all given by witnesses whose credibility the jury would have had every reason to question: prison inmates who had received lengthy prison terms for major felonies, who admitted having made prior statements under oath that were irreconcilable with their testimony at trial, who were quite likely aware that their parole dates might be advanced due to their cooperation with the government and whose testimony was internally inconsistent and inconsistent with each other's. Moreover, for the reasons we explained earlier, no meaningful cross-examination of Foster could be conducted with respect to the subject of his identification of the defendant. Finally, the prosecutor's case without Foster's testimony was not overwhelming. Having considered all of these facts and circumstances we cannot say that there is no reasonable possibility that Foster's testimony might have contributed to Owens' conviction. *Chapman,* 386 U.S. at 23, 87 S.Ct. at 827. Accordingly, the error was not harmless beyond a reasonable doubt.

## IV. CONCLUSION

Appellant's rights under the Confrontation Clause were violated, and the error was not harmless. We therefore reverse appellant's conviction and remand the case for a new trial.

REVERSED AND REMANDED.

BOOCHEVER, Circuit Judge, dissenting:

I must respectfully dissent because I believe the majority errs by (1) failing to remand to the district court for a factual determination whether Foster had personal knowledge of the identity of his attacker as required by Fed.R.Evid. 602, (2) holding that Foster was not "subject to cross-examination" within the meaning of Fed.R.Evid. 801(d)(1)(C), and (3) holding that Owens' right to confront Foster under the Sixth Amendment was violated.

### A. Personal Knowledge

Fed.R.Evid. 602 provides that "[a] witness *may not* testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." (Emphasis added.) The majority concludes that the district court did not rule on the issue of Foster's personal knowledge of the identity of his assailant after the testimony at trial failed to correspond with the prosecution's offer of proof. The majority also states that it is not clear that Foster had personal knowledge of his attacker. I do not quarrel with these conclusions. The majority proceeds to dispose of the case on the Confrontation Clause issue, concluding, "we do not believe it necessary or advisable to determine whether Foster had personal knowledge of the identity of his attacker."

I would remand for a determination of the factual question of Foster's personal knowledge. If the district court finds that he did not have personal knowledge, we need not reach the constitutional issue.

If the district court on remand finds that Foster did not actually observe his attacker (or if the court is unable to make a determination), then the Rule 602 personal knowledge threshold forecloses use of his testimony. The conviction must then be reversed to permit a trial without allowing either Foster or the agent to testify as to Foster's out-of-court identification. If the district court finds that Foster did actually observe his attacker, then the personal knowledge threshold is passed, and the evidentiary and constitutional issues properly may be reached for resolution. Because I also differ from the majority's disposition of those issues, I am obliged to address them.

### B. "Subject to Cross-Examination" Under Rule 801(d)(1)(C)

Rule 801(d)(1)(C) provides that a statement is not hearsay if "[t]he declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and the statement is ... one of identification of a person made *after perceiving him.*" Fed.R.Evid. 801(d)(1)(C) (emphasis added). Again it becomes clear that a finding of Foster's personal knowledge is critical to the proper determination of the propriety of his testimony. If it is found that Foster never perceived his attacker, then his testimony is inadmissible, and this determination needs no analysis into whether the rule requires effective cross-examination as to the basis underlying the identification.

Assuming *arguendo* that Foster did perceive his attacker, I cannot agree that he was not "subject to cross-examination" within the meaning of Rule 801. I have no objection to the majority's elucidation of Rule 801(d)(1)(C) and its rationale. I believe, however, that the requirements of the rule and its rationale were met in the cross-examination which occurred in this case. I disagree with the majority's conclusion that the extra-judicial identification may not be admitted unless the declarant is subject to cross-examination on the reasons, facts, and circumstances underlying the identification. The rule simply requires that the declarant be subject to cross-examination concerning the statement. It does not require that cross-examination of the declarant be sufficient to satisfy either the examining party or the reviewing court as

to the basis for the making of the identification. The Supreme Court's recent observation concerning the role of cross-examination in fulfilling the purpose of the Confrontation Clause is apposite to the concerns of Rule 801: "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* —— U.S. ——, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (emphasis in original). All that Rule 801 requires is the opportunity for effective cross-examination concerning the out-of-court statement. I believe Owens had that opportunity.

Foster's testimony complied with the literal terms of the rule, for he was fully available for cross-examination as to his extra-judicial identification. He testified at trial, and was both subject to cross-examination and actually cross-examined as to the basis of his prior identification. Further, neither the policy nor the rationale underlying the rule was violated. The jury had "ample opportunity to test him as to the basis of his former statement." Cross-examination elicited that at the time of trial he could not remember seeing his attacker, could not remember anything up to the point of his identification of Owens in the hospital, could not remember anything after that identification, but could "vividly" recall his statement of identification. Further, cross-examination revealed that at the time he made the statement, he knew why he had identified Owens, though he could no longer remember the reason. Thus, contrary to the majority's statement that there is no question but that Foster's memory loss was actual and complete, Foster was able to testify and be cross-examined as to what he did remember. In the face

of his selective memory, I believe the jury had an adequate basis to weigh the credibility of Foster's testimony. I also observe that whether his memory loss was actual and complete is properly a question for the jury.[1]

The importance of allowing the jury to weigh this type of testimony may be illustrated by the following analogy. Assume an attack and subsequent loss of memory as in this case, but instead of an incriminating extra-judicial identification, the victim looked at the photo-spread and stated "Owens was not the assailant." Later at trial, the victim cannot remember why he made the statement, only that he remembers vividly having made the statement, and that he had a reason for doing so. Assuming further that the victim had personal knowledge, shouldn't the statement be admitted in Owens' defense? It seems to me to be admissible and, if so, I see no reasoned basis under Rule 801(d)(1)(C) for distinguishing incriminating out-of-court statements.

Because Rule 801 requires no more than the opportunity to cross-examine a declarant as to an out-of-court prior identification, and because Foster was fully subject to cross-examination within the meaning of the rule, his testimony was admissible under the rule.

## C. Confrontation Clause

It is only if Foster's testimony is determined not to be hearsay that the court properly reaches the Confrontation Clause issue. Again assuming *arguendo* that Foster had personal knowledge of his assailant, I disagree with the majority's holding that Foster was not subject to cross-examination sufficient to satisfy the requirements of the Sixth Amendment.

---

1. The cases cited by the majority for the proposition that the court is to determine the nature and extent of the witness' memory loss are not persuasive. I would agree that there may be a threshold at which a court could conclude that a witness has not been subject to cross-examination. In the cases cited by the majority, however, the court permitted the jury to hear the testimony and exercise its function in weighing

the credibility of the testimony. *See, e.g., United States v. Baker,* 722 F.2d 343, 348–49 (7th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984); *Vogel v. Percy,* 691 F.2d 843, 846 (7th Cir.1982); *United States v. Rogers,* 549 F.2d 490, 494–96 (8th Cir.1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977).

As a preliminary matter, I disagree with the majority's characterization of this case as presenting the question that was identified but left open by the Supreme Court in *California v. Green,* 399 U.S. 149, 168–70, 90 S.Ct. 1930, 1940–41, 26 L.Ed.2d 489 (1970), and *Delaware v. Fensterer,* —— U.S. ——, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985). That question concerns an out-of-court statement of identification made by a witness who has no memory whatsoever of either the event itself or the making of the extrajudicial identification. In *Fensterer,* the Court said

> We need not decide today the question raised but not resolved in *Green.* As *Green*'s framing of that question [whether there are circumstances in which a witness' lapse of memory may so frustrate any opportunity for cross-examination that admission of the witness' direct testimony violates the Confrontation Clause] indicates, the issue arises only where a "prior statement," *not itself subjected to cross-examination* and the other safeguards of testimony at trial, is admitted as substantive evidence.

106 S.Ct. at 295 (emphasis added). The unresolved question would be presented only if the statement had been introduced without Foster testifying or without his having any recollection of making the out-of-court statement. Here, as I have indicated, Foster was available for cross-examination and was actually cross-examined concerning his prior statement.

The majority errs by equating the requirement of forcing the declarant to submit to cross-examination, *Green,* 399 U.S. at 158–59, 90 S.Ct. at 1935–36, with the question of whether it was possible for Owens to cross-examine him *effectively.* " 'The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*' " *Fensterer,* 106 S.Ct. at 294–95 (quoting *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974), quoting 5 J. Wigmore, *Evidence* § 1395 (3d ed. 1940)) (emphasis in original). "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-ex-

amination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Fensterer,* 106 S.Ct. at 295 (emphasis in original). Foster answered all questions put to him; he stated what he could remember and what he could not remember. He was thus subjected to cross-examination as required by *Green.*

The majority finds that in this case, however, the type and extent of cross-examination to which Foster could be subjected could not serve to expose several of the dangers surrounding out-of-court identification—misperception and failure of memory. To the contrary, the cross-examination directly addressed these issues. The questioning elicited that Foster could not remember seeing his assailant, nor could he remember why he identified Owens in the hospital. This was an adequate basis for counsel to argue that Foster's selective memory is not credible, and to permit the jury to make its determination of the weight to accord his testimony.

I am unconvinced by the majority's attempt to distinguish *Fensterer.* If a jury can be permitted to draw inferences regarding the reliability of an expert witness in the face of that witness' actual loss of memory as to the basis of his opinion, why cannot a jury also draw inferences regarding Foster's reliability in the face of his selective memory?

I also am struck by the curious result of the majority's analysis. In a case like *Green,* involving a witness who professed a lack of memory which the court found to be incredible or unbelievable, the jury will be permitted to hear the former statement and exercise its function of measuring the witness' credibility. If the court finds the memory loss believable, as in this case, then it will not permit the jury to hear the testimony. It is the jury's function to determine whether Foster's memory loss is actual and complete. We should not preempt the jury from exercising its role.

The Supreme Court has found Confrontation Clause violations when a court has

denied the right to cross-examination, *e.g., Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965), when a court has limited cross-examination of a principal witness on a material issue such as bias, *e.g., Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and when cross-examination has been completely thwarted by a witness' refusal to answer any questions, *e.g., Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). The Court has never found a denial of the right of confrontation when a witness responds concerning some relevant events but alleges a loss of memory as to others. In its *Fensterer* decision, the Court addressed an almost identical issue and found no violation. We should follow that teaching.