**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lugene BAKER, Defendant-Appellant.**

**No. 83-1517.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 21, 1983.

Decided Nov. 23, 1983.

As Amended Dec. 16, 1983.

Certiorari Denied Feb. 21, 1984.
See 104 S.Ct. 1312.

---

Richard C. Leng, Abramson & Fox, Chicago, Ill., for defendant-appellant.

Thomas A. Durkin, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL, BAUER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This is an appeal from a conviction following a jury trial in which the defendant was found guilty on three counts of a four-count indictment charging him with the commission of certain federal crimes. For the reasons stated below, we affirm the conviction.

In the summer of 1979, Sears Bank and Trust Company of Chicago discovered that it was missing 2,700 United States Treasury savings bonds totalling approximately $450,000 as well as six cashier's checks totalling approximately $140,000. The bonds and checks had been taken from an operations area in the bank, fraudulently negotiated, and redeemed at various other banks, causing monetary losses to Sears, the United States Treasury, and several other banks.

The losses were eventually traced to Wilbert Woodruff, a Sears Bank employee who had access to the areas where the blank cashier's checks and savings bonds were kept. Woodruff admitted involvement in the thefts and eventually pleaded guilty to stealing the bonds and cashier's checks. After being sentenced to a period of incarceration, he agreed to assist the government in prosecuting others involved in the thefts in exchange for a favorable report to the parole board.

Woodruff identified the defendant, Lugene Baker, as one who had played a major role in the thefts. Baker was arrested and

charged in a four-count indictment with: 1) conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371; 2) possession of stolen savings bonds in violation of 18 U.S.C. § 641; 3) aiding and abetting the embezzlement of savings bonds in violation of 18 U.S.C. §§ 2 and 656; and 4) aiding and abetting the embezzlement of cashier's checks in violation of 18 U.S.C. §§ 2 and 656.

At the defendant's jury trial, Woodruff testified that in the spring or early summer of 1979, he was visited at the bank several times by the defendant, a high school classmate who he knew by the nickname "Blue." Woodruff stated that during the course of these visits the defendant asked him to steal some cashier's checks. Woodruff testified that he convinced another Sears employee to obtain the checks for him, filled in the amounts, and then gave the checks to the defendant. Woodruff also testified that the defendant later persuaded him to steal three boxes of savings bonds, and that the defendant told him that he knew individuals who could cash the bonds for them. It was established at trial that the defendant's fingerprint appeared on one of the stolen bonds.

Patricia Groves was another witness for the prosecution. She testified to receiving a telephone call at her place of employment in August of 1979 from someone who she knew only by the name of Blue. She had met Blue through her husband in 1975. Groves stated that Blue asked her if she was interested in some "work" cashing stolen checks, and that she said that she was. Within a few hours, Blue visited Groves at her work place, and they arranged for him to deliver some bonds to her apartment that evening. Blue delivered the bonds as was arranged. Groves cashed the bonds at numerous suburban banks, but in the course of so doing was arrested for attempting to cash a stolen personal check.

Groves was convicted for her part in the scheme and agreed to cooperate with the government as a condition of her probation. After failing to appear for three appointments to discuss her testimony with the government attorneys prior to the defendant's trial, the sentencing judge issued an arrest warrant for a violation of the condition of her probation. Groves was ultimately arrested on the warrant, and she admitted to not wishing to testify on behalf of the government.

At trial, Groves failed to make an in-court identification of the defendant as the person known to her as Blue. She was then questioned by the government about a previous interrogation session with Agent Konkol of the Federal Bureau of Investigation and Agent Straughn of the Secret Service in the presence of her attorney at the Metropolitan Correctional Center in October of 1982. She testified that she recalled telling the agents that she had received the bonds from a person known to her as Blue, and that she recalled having been shown a photospread and selecting two photographs from the spread. However, she said that she could not recall what she told the agents when she selected the photographs.

Over defense counsel objection, Agent Konkol was permitted to testify that the photographs selected by Groves at the earlier session were photographs of the defendant, and that Groves had stated that these photographs looked like the person known to her as Blue. The trial judge initially instructed the jury that this portion of Konkol's testimony was being received only for purposes of impeachment, but later reinstructed the jury that the testimony could be used as substantive evidence as well. The defense counsel did not cross-examine Groves about her out-of-court statement implicating the defendant.

Before the end of the trial, the government submitted a jury instruction defining the elements of the aiding and abetting charges contained in counts three and four of the indictment. The instruction stated that the jury must find, among other things, that the defendant aided and abetted Woodruff to embezzle funds in the care and custody of the bank. This instruction failed to track the language of the indictment, which referred not only to the term "embezzle" but also to the terms "abstract" and "purloin." During the jury instruction

conference prior to closing arguments, the trial judge agreed to give the government's instruction as drafted. No objection or comment was made by the counsel for the defendant.

During his closing argument, the defense counsel stated that Woodruff had not embezzled the checks or bonds, but had stolen them. The trial judge then realized that the instruction, as worded, did not properly define the charge in the indictment. When she later gave the jury its instructions, she added the words "abstract" and "purloin" so as to conform the instructions to the indictment, over the defense counsel's objection.

The defendant was found guilty on the first three counts of his indictment, and not guilty on the fourth. On his appeal from the convictions, he raises two issues. First, he argues that the trial judge committed reversible error by altering the jury instructions after closing arguments. Second, he argues that the admission as substantive evidence of Patricia Groves's out-of-court identification of him violated his sixth amendment right to confront witnesses against him.[1] We find both arguments to be without merit.

1. Alteration of jury instructions after closing arguments.

The defendant contends that by altering the jury instructions after closing arguments, the trial judge violated Rule 30 of the Federal Rules of Criminal Procedure[2] and committed reversible error. The government concedes a technical violation of Rule 30, but argues that the violation does not constitute reversible error. We agree with the government.

▓▓▓ It is the well-settled law of this circuit that technical violations of Rule 30 require reversal only where the defendant can show actual prejudice. *United States v. Ledesma,* 632 F.2d 670, 678 (7th Cir.1980); *United States v. Demopoulos,* 506 F.2d 1171, 1179 (7th Cir.1974). The defendant's primary argument as to prejudice in this case is that the defense counsel relied on the original instruction in arguing to the jury that Woodruff was not technically an embezzler.[3] However, an examination of the trial transcript reveals that this is not what actually occurred. Although the defense counsel did state in his closing argument that Woodruff was a thief and not an embezzler, he never actually argued to the jury that the defendant should be acquitted on this technical ground. Rather, this statement was made in an attempt to undermine the credibility of Woodruff, who had been a key witness against the defendant, apparently in the belief that a thief might be less credible than an embezzler.[4]

---

1. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI.

2. Rule 30 states in relevant part: "[A]ny party may file written requests that the court instruct the jury on the law as set forth in the requests.... The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed."

3. "Embezzlement" is a technical term referring to the unlawful appropriation of property by a person already in lawful possession of that property. *See United States v. Sayklay,* 542 F.2d 942 (5th Cir.1976). In this case, it appears that Woodruff was not technically an embezzler because he was never in lawful possession of the bank funds and that therefore the defendant could not have been convicted on counts 3 and 4 under the original instruction.

This is why the trial judge changed the instruction to include the terms "abstract" and "purloin."

4. In his attack on Woodruff's credibility, the defendant's counsel stated:

The first thing we know is he's been convicted of a serious crime and I think as Mr. Durkin said you should take that into account. We also know he's a thief. He stole nearly $700,000 from his employer. He came like a thief in the night. He didn't embezzle these things. He went out and stole them from them. Got into a cabinet somehow, took them from a drawer. I submit to you that if Wilbert Woodruff ever showed up for an interview with any employer again and they knew of what had happened he would, nobody would trust him with a nickel of anybody else's money. I don't believe you would trust him with a nickel of yours and I don't believe you should trust him with Eugene Baker's future either.

Whatever the validity of this belief, we cannot conclude that the defense counsel relied on the original instruction in making his closing argument.[5]

The defendant also argues that the Rule 30 violation caused him prejudice because he would have been acquitted under the original instruction. This argument is clearly without merit. The defendant was never entitled to an instruction referring only to embezzlement. Therefore, he was not unfairly prejudiced by the trial judge's decision to correct an incorrect instruction. Had the government made a tactical decision to limit itself to an embezzlement theory, as the defendant argues it did, Appellant's Brief at 10, this might be a very different case. *See United States v. Sayklay,* 542 F.2d 942 (5th Cir.1976). However, the record contains no indication that the government made such a tactical decision, and it is difficult to imagine a reason for its doing so.[6] We therefore accept the government's explanation that it inadvertently omitted the terms "abstract" and "purloin," and hold that the trial judge did not commit reversible error by altering the jury instructions after the closing arguments.

2. Admission of the out-of-court identification.

The second issue raised by the defendant on this appeal is whether his sixth amendment confrontation rights were violated when the trial judge permitted Agent Konkol to testify about Patricia Groves's earlier statement identifying the defendant as the man who sold her stolen bonds. It is well-settled law that "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). The defendant's argument is that Groves's memory lapse rendered her unavailable for full and effective cross-examination and that therefore her earlier statement could not be admitted as substantive evidence.[7] We disagree.[8]

In *California v. Green,* the Supreme Court declined to reach the question of whether a witness's apparent memory lapse can so hamper cross-examination as to make use of the witness's out-of-court

Tr. at 582. It was these remarks that alerted the trial judge to the discrepancy between the indictment and the instruction submitted by the government.

5. Even if the defense counsel had argued to the jury that the defendant should be acquitted on counts 3 and 4 because Woodruff was technically not an embezzler, we seriously doubt that this would provide a ground for reversal. In a situation where the defense counsel knows of the discrepancy between the indictment and the instruction, and knows that this discrepancy was a result of the inadvertence rather than a tactical choice of the prosecution, *see infra* p. 347, counsel may not argue seriously that he or she relied on the instruction in making closing argument.

6. 18 U.S.C. § 656 prescribes the penalty for a bank employee who "embezzles, abstracts, purloins *or* wilfully misapplies" bank funds (emphasis added). When a statute such as this contains disjunctive language, the government may indict in the conjunctive form, and need only prove one of the charges in order to convict. *United States v. Abascal,* 564 F.2d 821, 832 (9th Cir.1975), *cert. denied,* 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1977). Thus,

there would have been no reason for the government to limit itself to an embezzlement theory.

7. The defendant does not challenge the admission of Groves's statement on due process grounds or any other grounds other than as violative of his right to confrontation.

8. The defendant has also argued that the admission of Groves's prior statement violated Rule 801(d)(1)(C) of the Federal Rules of Evidence. That rule was the basis on which the trial judge admitted Groves's statement into evidence and provides in pertinent part:

A statement is not hearsay if—The declarant testifies at the trial or hearing and *is subject to cross-examination concerning the statement,* and the statement is . . . one of identification of a person made after perceiving him . . . (emphasis added).

Although we realize that this rule and the confrontation clause are not necessarily coextensive, *California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970), in the instant case we hold that there has been no violation of 801(d)(1)(C) for the same reasons that we find no violation of the confrontation clause.

statement a violation of the confrontation clause. *Id.* at 168–69, 90 S.Ct. at 1940–41. The Supreme Court has yet to decide this question,[9] but a number of circuits have spoken to it in varying factual contexts. *See United States v. Rogers,* 549 F.2d 490 (8th Cir.1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977); *United States v. Payne,* 492 F.2d 449 (4th Cir.), *cert. denied,* 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 116 (1974); *United States v. Insana,* 423 F.2d 1165 (2d Cir.), *cert. denied,* 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970). The result in each of these cases has turned largely on the degree to which the declarant's memory lapse affected the jury's ability to determine the veracity of the out-of-court statement.[10] We believe this to be the proper focus of our inquiry here.

The facts before us are very similar to those in this circuit's recent case of *Vogel v. Percy,* 691 F.2d 843 (7th Cir.1982). In that case, the defendant was on trial for his participation in an armed robbery. An individual named Lindsey, who had already pleaded guilty in connection with the same robbery, was called to testify against the defendant. Lindsey was able to relate fully the events of the night of the robbery, but failed to testify to the defendant's involvement. The prosecution was permitted to introduce as substantive evidence an earlier sworn statement,[11] given by Lindsey approximately ten hours after the robbery, implicating the defendant in the planning and execution of the robbery. Lindsey maintained that he had no memory or knowledge of making the statement, and he attributed his lack of memory to having been intoxicated at the time the statement was taken.

The defendant was subsequently convicted for his participation in the robbery. In his petition for habeas corpus relief, the defendant argued that the admission of Lindsey's prior inconsistent statement violated his sixth amendment confrontation rights because Lindsey's lack of memory concerning the statement precluded full and effective cross-examination. This court rejected that argument on the ground that Lindsey's lapse of memory was " 'so selective as to be incredible.' " *Vogel v. Percy,* 691 F.2d at 846 (quoting *United States v. Shoupe,* 548 F.2d 636, 643 (6th Cir.1977) ). The court noted that Lindsey's claim that he was intoxicated at the time of his statement was unbelievable since he had not had a drink in more than ten hours and had been able to remember the events leading up to his statement. *Id.* at 846. That the jury apparently found Lindsey's prior statement more credible than his in-court testimony was a function not of the lack of cross-examination, the court stated, but of the inherently incredible nature of his in-court testimony. *Id.* The court also emphasized that the defendant was free at trial to cross-examine Lindsey regarding the circumstances of Lindsey's interrogation. *Id.*

◼ We find *Vogel v. Percy* to be controlling of the instant case. Our review of the trial transcript leads us to conclude that Groves's memory lapse was, as in *Vogel,* "so selective as to be incredible." [12] Groves re-

---

9. The Supreme Court has held, however, that a declarant need not adopt a prior statement as his or her own in order to be available for purposes of the confrontation clause. *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971). In *Nelson,* the witness denied having made the out-of-court statement attributed to him, and denied the truth of its substance, but he was available to testify as to the underlying facts. The Court found no sixth amendment violation.

10. In *United States ex rel. Thomas v. Cuyler,* 548 F.2d 460, 463 (3d Cir.1977), however, the court took a very different approach. Relying on the concurring opinion of Justice Harlan in *California v. Green,* the court held that the sixth amendment requires only that a witness be sworn in and not unavailable on fifth amendment grounds, and that the fact that the witness suffers or feigns a loss of memory on the stand is of no consequence for purposes of the confrontation clause.

11. Whether an out-of-court statement is sworn or unsworn makes no difference for purposes of the confrontation clause. *Vogel v. Percy,* 691 F.2d 843, 845 (7th Cir.1982).

12. The trial judge also found Groves to be less than candid. She stated: "I certainly did not believe her (Groves) testimony that she was

called with specificity when and where her interrogation session had taken place, who was present, the number of photographs and the manner in which they were displayed, and which photographs she in fact selected. Her memory failed her only when it came to implicating the defendant. In view of her admitted reluctance to testify, the inference that her memory lapse was not genuine is compelling.

■ Because Groves's memory lapse was "selective," we find that she was available for full and effective cross-examination about her earlier statement implicating the defendant, as required by the confrontation clause of the sixth amendment. The purpose of the confrontation clause is to facilitate the truth-finding process by providing the trier of fact with a satisfactory basis for evaluating the truth of the prior out-of-court statement. *California v. Green,* 399 U.S. at 161, 90 S.Ct. at 1936 (1970); *Mattes v. Gagnon,* 700 F.2d 1096, 1101 (7th Cir.1983). Here, as in *Vogel,* the defendant was free to cross-examine the out-of-court declarant, Groves, about the circumstances surrounding her interrogation. In addition, the defendant had the opportunity to question Groves about her ability to make the identification of the defendant which was attributed to her; although Groves was "unable" to recall identifying the defendant, she was able to recall and relate the circumstances surrounding her encounter with the man who sold her the bonds. In light of Groves's obvious reluctance to cooperate with the prosecution, such an inquiry might even have been fruitful for the defendant. Regardless of whether the cross-examination would have been fruitful, however, we hold that because Groves was willing to testify to the facts underlying her earlier out-of-court statement, the jury had a satisfactory basis

for evaluating that statement, and the confrontation clause was not violated.[13]

For the reasons stated in this opinion, we affirm the defendant's conviction.

unable to identify the defendant. I reject that testimony out-of-hand. I thought it was false testimony." Tr. at 484.

**13.** We express no view on whether Groves's prior statement would have been admissible had her memory lapse been more complete or more believable.