782 P.2d 693

**STATE of Arizona,
Appellee/Cross–Appellant,**

v.

**John Thomas ROMANOSKY,
Appellant/Cross–Appellee.**

No. CR–87–0150–AP.

Supreme Court of Arizona,
En Banc.

Oct. 19, 1989.

**218**

Robert K. Corbin, Atty. Gen. by Paul J. McMurdie and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee/cross-appellant.

John M. Antieau, Phoenix, for appellant/cross-appellee.

## OPINION

MOELLER, Justice.

## JURISDICTION

Defendant, John Thomas Romanosky, was convicted of the first degree murder and armed robbery of John Smith and the aggravated assault of John Smith's wife, Sara. He was sentenced to death for the murder and to consecutive terms of 28 years and 20 years for the robbery and assault. The murder conviction and sentence are here on automatic appeal, Ariz.R. Crim.P. 31.2(b), and defendant has also timely appealed his other convictions and sentences. The state has cross-appealed. We have jurisdiction under article 6, § 5 of the Arizona Constitution and A.R.S. § 13-4031.

## ISSUES PRESENTED

Because of the manner in which we resolve this case, we decide only the following issues:

1. Whether the trial court erred in admitting "composite identification" testimony.

2. Whether the trial court erred in admitting into evidence three T-shirts found in defendant's trailer.

3. Whether the trial court erred in admitting into evidence three cartridges seized at co-defendant Shepherd's house.

4. Whether the trial court erred in permitting a police officer to describe the photo lineup he conducted with the surviving victim, Mrs. Smith.

5. Whether there is sufficient evidence to support the verdicts.

6. Whether the trial court erred in requiring the state to produce extrinsic evidence of the use or threat of violence before considering whether defendant's four prior felony convictions qualified as statutory aggravating circumstances under A.R.S. § 13-703(F)(2).

## FACTS

Because one of the claims on appeal is the alleged insufficiency of the evidence to support the verdicts, we state the facts in a manner most favorable to supporting the verdicts, while recognizing that a trier of fact could arrive at different conclusions concerning some of the facts. *State v. Hutton*, 143 Ariz. 386, 390, 694 P.2d 216, 220 (1985).

Early on May 17, 1986, defendant and Debra Sturgeon began drinking in their trailer. They continued drinking throughout the day. Close to nightfall they were joined by Charles Shepherd. During the course of the evening, the three of them left the trailer once and returned. They then left a second time, proceeding, at some point in the middle of the night, to the Travelodge Motel on East Van Buren in Phoenix.

Initially, the trio intended to get money from a friend of Sturgeon's named Craig

who worked at the front desk of the Travelodge. Craig had a scheme by which he would not file registration cards of guests who paid in cash; he would then share the money with his friends. Noticing that Craig was not working, the three circled the block and then drove into the Travelodge parking lot, parked and got out.

They then went to the second floor of the motel where the defendant instructed Sturgeon to knock on the door of a room. When no one answered, defendant instructed Sturgeon to knock on the next door, room 59, which was occupied by the victims, John and Sara Smith. Mrs. Smith had just returned from visiting relatives in Florida, and Mr. Smith had met her at the airport. Because the Smiths intended to shop in Phoenix the next day, they planned to stay overnight at the motel.

When Sturgeon knocked on the door of room 59, Mr. Smith opened the door. Sturgeon told him that she had knocked on the wrong door. After the door was closed, defendant directed Sturgeon to knock again. This time, Mrs. Smith opened the door. Defendant pushed her aside, entered the room, confronted Mr. Smith with a gun and demanded money. As Mr. Smith reached for his wallet, defendant shot him in the chest, killing him instantly. Defendant ordered Mrs. Smith to retrieve the wallet, but she was unable to recover it from her husband's body. After telling Mrs. Smith, "If you want to live, then get the money," Sturgeon took the wallet from Mr. Smith's body. Defendant and Sturgeon then took a sack belonging to the Smiths and left. Mrs. Smith watched the two and Shepherd leave in what she described as a "light," "big" car.

According to Sturgeon, as the trio departed, defendant reached for a beer in the car and, in doing so, accidentally fired his gun, grazing the left side of his body. The three proceeded to defendant's trailer where they divided the stolen goods. The next day defendant and Sturgeon abandoned the trailer, taking their possessions with them.[1]

Two days later the police arrested defendant and Sturgeon. The circumstances of the arrest are unclear from this record and will be discussed in more detail in a later section of this opinion. Upon arresting Sturgeon, the police seized a green laundry bag containing clothing and personal items. The bag contained a souvenir Florida T-shirt. In searching defendant's and Sturgeon's former trailer, the police discovered and seized three T-shirts with Florida logos.

On the day after the murder, Jack Doss, who lived with his mother and Shepherd, found a sackful of gun parts in his room. Included in the sack was a cylinder containing three live .357 magnum bullets. Two days later the police executed a search warrant on the house and seized the cylinder and bullets.

Defendant, Sturgeon and Sheperd were indicted for the murder and armed robbery of John Smith and for the aggravated assault of Sara Smith. Sturgeon pled guilty to second-degree murder and received a flat ten-year sentence. She testified as a state's witness at defendant's trial. Shepherd was tried separately.

### DISCUSSION

1. *Composite Description*

A. Background Facts

A major contention on appeal revolves around an issue that the parties and the court, in briefs and argument, have referred to as the "composite identification" issue. The question is whether the receipt of the composite identification testimony from Officer Butler and the receipt in evidence of physical items based on that testimony constitute reversible error. We set the stage with a fairly detailed recitation of applicable facts to place the issue in its proper context.

Mrs. Smith, the surviving victim, was unable to identify the defendant at trial. In an earlier photo lineup she had also been unable to identify him, but had stated she

---

**1.** Some evidence indicates they were evicted from the trailer. In any event, they left the trailer the next day with no intent to return to it.

believed the murderer to be one of two of the several individuals depicted in the photo lineup. Defendant was one of the two. After the murder, police were called to the scene. An unidentified officer (not Officer Butler) obtained a partial description of a man and a woman from Mrs. Smith. Although the record is imprecise as to exactly how Mrs. Smith described the assailants to the unidentified officer, her description was admittedly sketchy. At trial, she could recall only that the man was "I don't know, about 5'10", dark hair, full beard, average" and she remembered stating earlier that he had pock marks on his cheek. With respect to the woman, Mrs. Smith's only recollection was that she was "about 5'6", light hair like strawberry blonde, thin."

On the day of the murder, an armed robbery occurred at a Circle K in Phoenix. From various individuals not identified in this record, police officers (also not identified in this record) obtained fairly detailed descriptions of a man and woman involved in the Circle K robbery. Comparing these descriptions to the partial description Mrs. Smith had provided concerning her husband's murderers, police suspected that the same couple might be involved in both crimes. The defendant and Sturgeon were arrested on May 19, 1986, two days after the murder. The arresting officer was Detective Butler.

### B. Detective Butler's Composite Identification Testimony

The only portion of the composite identification that related to *this* case came from Mrs. Smith. All other parts of the composite identification came from witnesses to the Circle K robbery.[2]

During Officer Butler's direct examination, he testified that "[d]uring the time I was at the scene, information had been gained as to possible suspect descriptions that were involved in this homicide." When asked how those descriptions were obtained, Butler went on to state that: "... when I got there I received information from the night detectives and officers

who had interviewed numerous people in the area. Also, Mrs. Smith had been briefly interviewed. A description of a male and female suspect—."

At that point defense counsel made a hearsay objection which was sustained. Then there was a bench conference, which went as follows:

MR. SCULL: Judge, what my position is on this is that any time the police go out and make an investigation, all of the police officers share the same knowledge. That's the law as I understand it. They put together a description, a compilation of their knowledge they seen, and that's the description that they use in going out and trying to effectuate an arrest. So that not one police officer can testify to any one particular thing many times, but it's a compilation of knowledge, and they're all assumed and presumed as sharing the same knowledge.

Now, there was a description that was put out of these 2 suspects. That's the description that I'm trying to bring in at this time.

MS. PARKER: Your Honor, the problem with this is the only person who can testify that they actually saw these potential suspects is Sara Smith. From the description Sara Smith gave, the officers became aware that there was the earlier armed robbery with similar suspect descriptions in that.

I don't think that a compilation of all of these earlier descriptions lead us anywhere. The description that they got from Sara Smith should come in through Sara Smith, and then the fact that Romanosky and Summerville or Sturgeon were arrested subsequently should come in. But there is no reason to go into a compilation of descriptions, because then I wouldn't have the ability to cross examine on this compilation of suspect descriptions.

MR. SCULL: Well—

MS. PARKER: Because if I did, it would lead us right into the armed robbery.

---

2. Defendant was also indicted in the Circle K robbery. Those charges were dismissed by the

state after it obtained defendant's conviction on the Smith murder.

MR. SCULL: Now that's fine. What she is saying is now you can't use any of the description that came out of the armed robbery, which is how we got these people.

I don't give a damn if we sever the armed robbery out of this case, which is what we have done, but I still have to use that description as part of this case.

Well, it's true this is the truth; that's how they got the description of these people. This is a homicide. I'm not going to go into the armed robbery. I'm just going to go into the description that they obtained.

THE COURT: With that caveat, the objection is overruled.

The direct examination of Butler then continued:

Q. BY MR. SCULL: Now, detective, you were the case officer on this case, am I correct?

A. Yes, I was.

Q. And as case officer, what is your obligation?

A. As a case agent, as we phrase it, he is responsible for the investigation of the entire case from start to finish: That is, if a suspect was apprehended, your court trials and everything else.

He directs the other detectives to assist him in the different things that need to be done, like interviewing witnesses, investigative leads, collecting—or aiding in the investigation of a scene.

Q. Is it fair to say they report back to you information that they obtain?

A. That's correct.

Q. And then you assimilate that and put together the reports, is that fair?

A. Yes, I do.

Q. Okay; in your duties as doing this, were you able to compile a description of a couple of possible suspects?

A. Yes.

(Defense counsel entered a continuing hearsay objection with permission of the court.)

. . . . . . .

Q. ... [G]ive us the description that you compiled?

A. After all information was gathered, a description—a possible suspects was made. The suspect number 1, which would be the shooter, was a white male, 28 to 30 years of age, 200 pounds, stocky build, black curly hair, thick mustache and beard, possible acne scars on cheeks. Clothing worn was a black watch-type knit cap, Levis jacket, faded Levis pants, dark blue pull-over shirt.

Suspect number 2 was described as a white female, 25 years, 5'6", 5'6" to 5'7"; approximately 145 pounds; shoulder length strawberry blonde hair; spoke with a southern accent. Clothing worn was a knit pullover blouse, lavender in color, with quarter inch vertical design; faded Levis.

Q. Now, is that the description that was used and broadcast that night?

A. Yes; Detective Martinsen did return to the general investigations bureau, put out a blue book broadcast and description of these people involved.

(R.T. 3/17/87 at 68–71.)

C. Physical and Expert Testimony Based on the Composite Identification Testimony

Later, Butler testified that the defendant was wearing a particular Levi jacket (Exhibit 4) and a particular blue pullover shirt (Exhibit 11) at the time of his arrest. Based on this foundation, the trial court admitted the jacket and T-shirt into evidence. Still later a criminologist testified for the state that he ran certain tests on the Levi jacket and the T-shirt. The results were that the T-shirt was positive for lead and inconclusive for nitrates and nitrites. The Levi jacket was positive for lead and for gunpowder particles.

D. Did Error Occur?

 The trial court, after initially rejecting the proffered testimony, reversed itself and admitted it only because the prosecutor stated he was offering it for the purpose of showing "how we got these people", i.e., to justify or show the reason for the arrest. The problem with this argument is that no issue in the case called

for any evidence concerning the reason for or circumstances of the arrest, nor did the state ever offer any.[3] Having obtained the admission of the evidence, the only use made of it was to provide identification of the alleged murderers. The identification evidence provided to the jury by Detective Butler was vastly more detailed than that provided by Mrs. Smith. All the identification testimony, except the sketchy information supplied by Mrs. Smith, came from alleged witnesses to the Circle K robbery, yet the jury clearly was led to believe that witnesses to the murder had supplied the identification information. The problem is compounded by the fact that the jury itself could make its own comparison of the composite identification testimony to the courtroom appearance of the defendant and the witness Sturgeon, all in the belief that the descriptions had been provided by witnesses to the murder, rather than by witnesses to an unrelated crime. In addition, the officer's testimony then was used as foundation for receipt into evidence of the Levi jacket and the blue T-shirt worn by defendant at the time of his arrest. Those items, in turn, were tested and formed the basis for damaging expert testimony against the defendant.

Although the state makes a mild attempt to justify the admissibility of the evidence in question, its primary argument is that defendant waived his objection by not making the *right* objection in the trial court. The state argues:

> On appeal, appellant asserts that the testimony was not offered to show why the police officers arrested appellant, as asserted by the prosecuting attorney, but was offered to show that "the killer was dressed just like appellant."

Appellee's Brief, p. 31.

In short, the state argues that defendant should have objected on grounds of relevance, and that the hearsay objection was insufficient to preserve the point now made. We note first that defendant's objection may not have been as limited as the state now contends.[4]

Assuming *arguendo* that defendant's objection was strictly based on grounds of hearsay, it is true that in some circumstances out-of-court declarations will not be excluded as hearsay when they are not offered to prove the truth of the matter asserted but to prove their effect upon a person whose conduct is in question, such as an arresting police officer. *State v. Flores*, 124 Ariz. 310, 603 P.2d 937 (App. 1979); *State v. Wilson*, 113 Ariz. 363, 555 P.2d 321 (1976). Had a legitimate issue arisen in this case concerning the arresting officer's conduct, a hearsay objection might be unavailing, given a proper foundation for the out-of-court statements. Because no issue arose concerning the circumstances of the arrest, we feel it is appropriate to evaluate the admissibility of the evidence under the only use to which it was put— i.e., to identify the alleged murderer and lay a foundation for the admission of physical items of evidence and accompanying expert testimony. For that use, we believe the objection was adequate.[5]

---

3. At oral argument, appellate counsel for defendant argued, without contradiction by the state, that defendant and Sturgeon were in fact arrested for an unrelated fight. Trial counsel for defendant tendered an affidavit on appeal suggesting that the arrest was probably triggered by the description of the suspects in the Circle K robbery. We must consider only the record that is properly before us on appeal.

4. At the bench conference concerning Butler's composite identification testimony, one of the objections voiced was that "I don't think a compilation of all of these earlier descriptions lead us anywhere." This suggests a relevancy, rather than a hearsay, objection. We note also that defendant objected to the physical items of evidence on foundational grounds.

5. At oral argument before this court the issue was raised whether the composite description testimony was admissible under the present sense impression exception to the hearsay rule. Under this exception, hearsay is admissible for "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." *See* Ariz.R.Evid. 803(1); *see also Trevizo v. Astec Industries, Inc.*, 156 Ariz. 320, 751 P.2d 980 (App.1987). This exception has three requirements: an event or condition must be described or explained; there must be a perception by the declarant; the statement must be made immediately after the event. *See United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 323 (1982). Assuming the state could have laid a proper foundation for Mrs. Smith's de-

Had the prosecutor offered the evidence pursuant to the only theory upon which it was used, the objection that was made would have been proper and adequate. Even if we were to conclude that the objection was technically insufficient, we would still be left with determining whether, under the circumstances, fundamental error occurred. We believe, however, that the objection adequately advised the court and the prosecutor of the nature of the evidentiary problem; the objection was overcome only because the prosecutor asserted that an issue in the case rendered the hearsay objection inapplicable. There was no such issue.

Having concluded that we should address the merits of defendant's argument, we necessarily conclude that error occurred because the state concedes that the composite identification testimony was not properly admissible *for the purpose of proving the murderer's identity.*

### E. Harmless Error Analysis

■ The state alternatively contends that the error was harmless. In order to find an error harmless, we must be satisfied beyond a reasonable doubt that the evidence did not impact the verdict. *State v. Thomas,* 133 Ariz. 533, 537, 652 P.2d 1380, 1384 (1982) ("harmless error doctrine concerns errors of fundamental or constitutional nature").

The composite identification provided a very specific, detailed description of a male and female perpetrator. Those descriptions matched the defendant and the state's star witness. The description also served as the foundation for the T-shirt and jacket, which were admitted into evidence and which, in turn, were the basis for expert testimony concerning the presence of lead and gunpowder particles.[6] The jury had no idea that the identification testimony it was

listening to did not, for the most part, relate at all to this murder case.

The state also argues that the evidence was merely corroborative of Sturgeon's testimony. The problem with this analysis is that one must first assume the truth and accuracy of Sturgeon's testimony before the improperly received evidence can be considered to be corroborative. Sturgeon is a confirmed, long-time alcoholic and drug addict who has had severe drug problems since the age of thirteen. In addition to suffering from epileptic seizures, she is prone to repeated and lengthy alcoholic blackouts. In a pretrial interview, she virtually admitted making up her story by reviewing the police reports. She also admitted drinking a considerable amount of alcohol the day of the murder. Her credibility was quite susceptible to attack and doubt.

The surviving victim, Mrs. Smith, was unable to provide much of a description of the assailants. In contrast to Butler's composite description, she could not testify about what the assailants were wearing the night of the murder. She never identified defendant at trial, and was unable to make a positive pretrial identification from a pretrial photo lineup.

Under the circumstances of this case, it is impossible to conclude beyond a reasonable doubt that the jury ignored the improper identification evidence and everything based upon it. Thus, we cannot characterize the error as "harmless."

### 2. *Admitting the Three T-Shirts*

The defendant raises several additional evidentiary issues. Because they are likely to recur at retrial, we address them. The first is his contention that the trial court erred in admitting the three T-shirts into evidence.

scription as a present sense impression, we know of no theory under which the present sense impressions of witnesses to the Circle K robbery are admissible in *this* case.

6. We have considered the possibility that the state might have been able to secure the admission of the clothing and the tests through alter-

nate foundational sources. Our analysis of the record confirms that the trial court received the clothing based on Butler's testimony. We, of course, do not preclude the admission of the clothing or tests in any future trial if a proper foundation is shown.

The murder occurred sometime in the middle of the night of May 17–18, 1986. The next day defendant and Debra Sturgeon were either evicted from their trailer or abandoned it. The following day, a Phoenix police officer went to the trailer to search it. It was locked. After gaining entry with the permission of the trailer's owner, the officer found a trash can inside the trailer in which he found three souvenir Florida T-shirts.

Mrs. Smith purchased several T-shirts bearing Florida logos as souvenirs and had them in the motel room the night her husband was murdered. The killers took a sack of her possessions from the motel immediately after the killing. When the police arrived at the motel to investigate the killing, the T-shirts were gone. Mrs. Smith described the T-shirt found in Sturgeon's bag at the time of her arrest as similar to those she purchased in Florida. She also described the three T-shirts found in defendant's trailer as similar to those she had bought. Without objection, a police officer testified that Mrs. Smith had earlier positively identified the T-shirts as hers.

■ Defendant argues that the trial court erred by admitting the three T-shirts from the trailer due to lack of a proper foundation. Defendant notes the state provided no evidence concerning access to the trailer between the time the defendant and Sturgeon were evicted from it or abandoned it until the time of the search of the locked trailer the next day. Defendant also labels Mrs. Smith's identification of the shirts as equivocal.

The sufficiency of foundation for evidence is determined by Rule 901(a) of the Arizona Rules of Evidence, which provides that "[t]he requirement of ... identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(b) provides a variety of illustrations of how Rule 901(a) can be satisfied. Two that are applicable to the evidence in question are: 901(b)(1)—permitting testimony of a witness that the evidence is what it is claimed to be; and 901(b)(4)—the evidence can be identified by its distinctive characteristics taken in conjunction with circumstances of the case.

The fact that Mrs. Smith said the T-shirts were "similar" to the ones she purchased in Florida, instead of claiming to be able to positively identify them as hers, clearly goes only to the weight of the evidence, not to its admissibility. *See State v. Carriger*, 123 Ariz. 335, 599 P.2d 788 (1979), *cert. denied*, 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 736 (1980) (fact that no one could positively identify jewelry as part of the jewelry store's pre-robbery inventory goes to weight, not admissibility).

Under Rule 901(b)(4), the T-shirts were properly identified because they possessed distinctive characteristics, the Florida logos; that fact, taken in conjunction with the other facts of the case, support their admissibility under Rule 901. *State v. Blazak*, 114 Ariz. 199, 560 P.2d 54 (1977) (fact that accomplice could not be certain that the similar-appearing ski mask found on the alleged escape route was worn by defendant did not preclude its admittance).

Absent a clear abuse of discretion, we will not disturb a trial court's ruling on the admissibility of evidence. *State v. Macumber*, 119 Ariz. 516, 521, 582 P.2d 162, 167, *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). We find no abuse of discretion here.

### 3. The Three Cartridges Seized at Shepherd's Residence

■ During execution of the search warrant on the Shepherd house, the police seized three live .357 magnum Federal cartridges which were eventually received in evidence at trial. As with the three T-shirts, defendant contends insufficient foundation existed to admit the three cartridges. He argues that the state failed to provide sufficient testimony on the chain of custody.

Foundation for an exhibit may be laid by establishing a chain of custody through evidence suggesting the whereabouts of the exhibit at all times. *State v. Hardy*,

112 Ariz. 205, 540 P.2d 677 (1975). Whether to admit the exhibit after chain-of-custody evidence has been provided is within the discretion of the trial court which, as we have previously stated, will not be disturbed absent an abuse of that discretion.

Originally, the state presented as one exhibit in a sealed container the three cartridges, the cylinder in which they were found, and an expended slug found at the murder scene. After defendant's pre-trial motion in limine, the items were separated into three exhibits.

While searching Shepherd's residence, Officer Larry Martinson found the three rounds of ammunition in a revolver cylinder. The bullets, cylinder, and an expended slug from the murder scene were all submitted for analysis to a local criminalist and eventually sent to the FBI for further testing.

The local criminalist testified he received and analyzed items in a box containing an expended slug, a cylinder, and three live bullets. He dismantled one of the bullets for further analysis. An FBI analyst testified he received the expended slug and three live cartridges, one of which was disassembled. He found the expended slug and the live bullets to be "analytically indistinguishable." Finally, the state presented two reports documenting the chain of custody of the three cartridges.

These procedures fulfilled the chain of custody requirement and established sufficient foundation to admit the three cartridges into evidence. The trial court did not abuse its discretion in admitting the cartridges.

### 4. Officer Raines' Testimony about the Photo Lineup with Mrs. Smith

Prior to trial defendant requested a *Dessureault* hearing.[7] At the hearing, it was established that Mrs. Smith had positively identified Debra Sturgeon from a five-female photo lineup. When presented with a five-male photo lineup, Mrs. Smith rejected three and pondered over the remaining two. When the police officer broke the silence, Mrs. Smith responded that she was sure that one of the two remaining photos was of the murderer, but she was unable to narrow it down to one photo. Defendant's photo was one of the two. At the conclusion of the *Dessureault* hearing, the trial court ruled that the state had carried its burden of showing that the photo lineups were not unduly suggestive.

At trial Mrs. Smith was not asked by either side to make an in-court identification of the defendant; neither was she asked whether she could. She was asked by the prosecutor about the earlier photo lineup. Defendant's objection that the question constituted improper redirect examination was sustained. After Mrs. Smith's testimony and before Officer Raines' testimony, the defendant moved in limine to preclude the state from offering any testimony from Officer Raines regarding the male photo lineup shown to Mrs. Smith. The sole basis of defendant's objection was that there had been no "identification" because Mrs. Smith had not narrowed the field to one, but only to two. Defendant claimed that because there was no "identification," the testimony did not fall within the hearsay exception of Rule 801(d)(1)(C), which permits identification testimony of this type under certain conditions.[8] After considering counsel's arguments and the facts developed at the earlier *Dessureault* hearing, the trial court denied defendant's motion in limine and permitted Officer Raines to testify. His testimony, as at the *Dessureault* hearing, was that Mrs. Smith rejected three of the five pictures in the male photo lineup, stated she was sure the murderer was one of the

---

7. Under *State v. Dessureault,* 104 Ariz. 380, 384, 453 P.2d 951, 955 (1960), *cert. denied,* 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970), a defendant is accorded a hearing to determine whether a pre-trial identification procedure was unduly suggestive and thus would taint an in-court identification.

8. Rule 801(d)(1)(C) Arizona Rules of Evidence, provides, in part: "A statement is not hearsay if ... the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... one of identification of a person made after perceiving him...."

remaining two, but could not narrow the list to one.

■ On appeal, defendant abandons the argument made at trial; namely, that narrowing the field to two is not "identification" evidence. Instead, defendant contends, for the first time on appeal, that the evidence is inadmissible under Rule 801(d)(1)(C) because Mrs. Smith did not make an in-court identification or describe the earlier photo lineup. Nothing in the record suggests that Mrs. Smith was capable of making a positive one-person identification of defendant at time of trial. She could, of course, have testified to the earlier photo lineup procedure, but was prevented from doing so when the defendant objected to such testimony as "improper redirect." Issues cannot be raised for the first time on appeal, absent fundamental error. Ariz.R.Evid. 103(a)(1). *State v. Chavez*, 143 Ariz. 238, 693 P.2d 893 (1984). Clearly there is no fundamental error here. Even under defendant's present argument, the evidence was admissible given a proper foundation, but defendant's own objection precluded laying such foundation.

Defendant also contends, for the first time on appeal, that Officer Raines' testimony should have been excluded because Mrs. Smith's identification was "uncorroborated." We find no merit in this argument.

■ Finally, defendant contends, also for the first time on appeal, that Officer Raines' testimony about Mrs. Smith's prior identification violated the confrontation clause. According to defendant, by not testifying about the prior identification in "any meaningful fashion" (having been prevented from doing so by defendant's objection), Mrs. Smith was functionally "unavailable." Defendant's argument is specious. The right to confront an adverse witness is satisfied when the defendant is free to cross-examine the out-of-court declarant. *See United States v. Baker*, 722 F.2d 343, 349 (7th Cir.1983), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984). Mrs. Smith was present, testified, was subject to cross-examination and was cross-examined.

### 5. *Sufficiency of the Evidence*

We address defendant's argument that the evidence is insufficient to support the verdict because the issue may present itself at retrial. For present purposes, we exclude consideration of the evidence we have held was improperly received.

In reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and resolve all reasonable inferences against the defendant. *State v. Hutton*, 143 Ariz. 386, 390, 694 P.2d 216, 220 (1985). This court will reverse a jury's guilt verdict only in a case completely lacking probative facts to support the verdict. *State v. Lawrence*, 123 Ariz. 301, 307, 599 P.2d 754, 760 (1979). We will not reweigh the evidence on appeal to determine whether we would arrive at the same conclusion as the jury. *State v. Mincey*, 141 Ariz. 425, 432, 687 P.2d 1180, 1187 (1984), *cert. denied*, 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984).

Essentially, defendant claims that the state's case depends on Sturgeon's testimony, which the defendant contends is unreliable. As part of our harmless error analysis, we have previously noted that Sturgeon's testimony is, indeed, subject to challenge. However, credibility is an issue to be resolved by the jury upon a proper record. Clearly, if a jury believes Sturgeon's testimony, that testimony alone is sufficient to sustain the verdict. Defendant's detailed arguments attacking her credibility are more appropriately addressed to the jury and not to a reviewing court.

### 6. *Death Penalty Issues Raised by Defendant*

Defendant has raised several death penalty issues. Some are constitutional attacks upon Arizona's death penalty in general, of the type which we have recently and repeatedly answered. Other death penalty issues raised by defendant are peculiar to his case. If, in future proceedings, defendant is again convicted and sentenced to death, these arguments could ap-

propriately be considered on the precise record as it then exists. Accordingly, in light of our disposition in this matter, we perceive no benefit in addressing defendant's death penalty arguments at this time and decline to do so.

### 7. *Death Penalty Issue Raised by State*

Prior to trial, the State alleged that defendant had been previously convicted of various felonies. After the jury convicted him of the present charges, the matter of prior convictions was submitted to the jury. It found the defendant had been previously convicted of the following felonies: robbery, aggravated assault, aggravated robbery, and attempted robbery. The first two were committed in Ohio in 1971 and 1974, respectively. The last two were committed in Arizona in 1981 and 1984, respectively.

In its sentencing memorandum, the State urged the trial court to find that each of the four earlier felonies was a statutory aggravating circumstance under § 13–703(F)(2), which provides:

> Aggravating circumstances to be considered shall be the following:
>
> . . . . .
>
> 2. The defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person.

The trial court refused to consider any of the prior convictions as potential statutory aggravating circumstances, stating in its special verdict:

> The State did not offer any testimony from victims or other witnesses to these crimes. No Court transcripts of the record made on any of these crimes was offered. The Court is persuaded that the *nature* and *circumstances* of the prior crimes must be proved at the trial or presentence hearing beyond a reasonable doubt.

(Emphasis in original.)

The state cross-appealed from the trial court's refusal to consider the prior convictions. The cross-appeal presents a question of statutory interpretation of general applicability in death penalty cases that we believe needs to be resolved. Therefore, we consider the issue although it will not become relevant in this particular case until and unless the defendant is re-convicted and the state again seeks the death penalty.

Before turning to the merits of the State's cross-appeal, we address defendant's argument that we have no jurisdiction to hear and decide the State's cross-appeal. Simply stated, defendant's argument is that the trial court's ruling constituted an "acquittal" of a statutory aggravating circumstance and the state may not appeal from an "acquital" because it would subject the defendant to double jeopardy in violation of his constitutional rights. This argument is disposed of by *State v. Tittle*, 147 Ariz. 339, 710 P.2d 449 (1985), where the identical argument was advanced and resolved against the defendant.

■ We hold that the trial court erred when it ruled it would not consider prior felony convictions as statutory aggravating circumstances under § 13–702(F)(2) absent extrinsic evidence of the circumstances of the crimes. We have previously held that the court may take judicial notice that some crimes are, *by definition*, violent felonies. *State v. Tittle*, 147 Ariz. 339, 710 P.2d 449 (1985); *State v. Nash*, 143 Ariz. 392, 694 P.2d 222 (1985). We have previously rejected a defendant's argument that his prior robbery conviction could not be considered an aggravating circumstance because the state had not independently introduced evidence of force or fear. *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253, (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979). If either force or fear is a required element of the crime for which the defendant was previously convicted, it is conclusively presumed that the conviction encompassed force or fear. *Watson*, 120 Ariz. at 448, 586 P.2d at 1260. Conversely, in *State v. Gillies*, 135 Ariz. 500, 662 P.2d 1007 (1983), we held that the state was precluded from offering extrinsic evidence to show that the defendant's prior theft conviction involved the use or threat of violence. In so holding, we stated:

In order to constitute an aggravating circumstance under A.R.S. § 13–703(F)(2), the prior conviction must be for a felony *which by its statutory definition* involves violence or the threat of violence on another person.

. . . . .

We cannot allow what is, in effect, a second trial on defendant's prior convictions to establish the existence of an A.R.S. § 13–703(F)(2) aggravating circumstance.

(Emphasis added). *Gillies*, 135 Ariz. at 511, 662 P.2d at 1018.

The rule to be derived from these cases is clear: the statutory definition of the crime governs. If the statutory definition of the crime for which the defendant was previously convicted necessarily includes the use or threat of violence, a trial court may find that it is a statutory aggravating circumstance under § 13–703(F)(2). If, under the statutory definition, the defendant could have committed and been convicted of the crime without using or threatening violence, the prior conviction may not qualify as a statutory aggravating circumstance under § 13–703(F)(2).[9]

## DISPOSITION

The erroneous receipt of the composite identification testimony requires a new trial. We reject all of the defendant's other evidentiary claims.

We hold that the state is not required to submit extrinsic evidence of the use or threat of violence to qualify a prior felony as a statutory aggravating circumstance under A.R.S. § 13–703(F)(2).

The convictions and sentences are set aside and this case is remanded for a new trial to be conducted in accordance with this opinion.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concur.

WILLIAM A. HOLOHAN, Justice, participated in this matter but retired prior to the filing of this opinion.

CORCORAN, J., did not participate in the determination of this matter.

---

**9.** Nothing in this opinion should be construed to limit the type of evidence a defendant may tender in mitigation under § 13–703(G), nor could such a limitation be constitutionally sustained, *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), *Bell v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978); and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion). Thus, although a defendant may not offer extrinsic evidence to show that the prior offense does not qualify as a § 13–703(F)(2) aggravating circumstance, he may offer evidence of the circumstances of the crime as potentially mitigating evidence under § 13–703(G).